755 F.2d 931
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MARIO DRESCHER, PETITIONER-APPELLANT,
v.
B.C. MARSHALL, RESPONDENT-APPELLEE.
 NO. 84-3224
 United States Court of Appeals, Sixth Circuit.
 1/16/85
 
 On Appeal from the United States District Court for the Northern District of Ohio
 Before: KEITH and MARTIN, Circuit Judges, and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Appellant Drescher appeals a decision by the district court for the Northern District of Ohio denying his writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254.
 
 
 2
 Drescher petitioned the district court for a writ of habeas corpus after exhausting all appeals available to him in the Ohio state courts. In his habeas petition, Drescher contended that he was subjected to double jeopardy and thus denied due process of law. Specifically, appellant contended that kidnapping was a lesser included offense of aggravated robbery and thus the imposition of separate sentences for kidnapping and aggravated robbery constituted multiple punishment for the same crime. Appellant's petition was referred to a United States Magistrate who recommended denial of the petition for a writ of habeas corpus. The district court adopted the Magistrate's recommendation.
 
 
 3
 On March 2, 1981, Drescher and an accomplice entered a business establishment located in the Rolling Acres Mall in Summit County, Ohio, known as 'The Tannery', on several occasions. Karen Durgala and Cynthia McElhiney were employed as sales clerks. Eventually Drescher and his accomplice, now deceased according to Drescher, conducted an aggravated robbery by using a firearm and then taking money from the cash register and boots from the store after displaying the weapon to Ms. Durgala and her associate. Ms. Durgala and her associate were taken to a separate stock room located to the rear of the sales area and hog tied together, with tape brought to the crime scene by Drescher, and abandoned in that condition while Drescher and his accomplice fled from the scene of the crime.
 
 
 4
 Where it is asserted that an inmate's constitutional rights are violated by multiple punishments emanating from criminal activity involving one transaction, the United States Supreme Court has determined that the proper standard of appellate review is whether the trial court has exceeded the sentencing authority which the General Assembly has granted to the judiciary. Missouri v. Hunter, 459 U.S. 359 (1983); Albernaz v. United States, 450 U.S. 333 (1981); Whalen v. United States, 455 U.S. 684 (1980); Brown v. Ohio, 432 U.S. 161 (1977).
 
 
 5
 The Supreme Court has developed the principle that the guarantee against double jeopardy, in situations such as the one in the instant case, requires deference to the legislature in defining criminal offenses prescribing the punishment imposed:
 
 
 6
 [W]here consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.
 
 
 7
 Brown v. Ohio, 432 U.S. at 165.
 
 Moreover, the Court has also held that:
 
 8
 Whalen and Albernaz lead inescapably to the conclusion that simply because two criminal statutes may be construed to prescribe the same conduct under the Blockburger test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes. The rule of a statutory construction noted in Whalen is not a constitutional rule requiring courts to negate clearly expressed legislative intent. Legislatures, not courts, prescribe the scope of punishments.
 
 
 9
 Missouri v. Hunter, 459 U.S. at 368.
 
 
 10
 The Ohio general assembly allows punishment for multiple offenses that have a common factual background through Ohio Revised Code Section 2914.25, which provides:
 
 
 11
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 
 
 12
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
 
 
 13
 Thus, the Ohio General Assembly has authorized trial courts in a single criminal proceeding to convict and sentence a criminal defendant for two or more offenses, having as their genesis the same criminal conduct or transaction, provided that the offenses: (1) were not allied and of similar import; (2) were committed separately; or (3) were committed with a separate animus as to each offense.
 
 
 14
 The robbery and kidnapping were clearly proscribed by two separate statutes. Drescher and his accomplice used force and threats in order to 'remove another from the place where he is found or restrain him of his liberty' in order to facilitate the commission of a felony and the escape thereafter in violation of Ohio Revised Code Sec. 2905.02(A)(2). Appellant and his accomplice also had a deadly weapon while committing the theft offense in violation of Ohio Revised Code Sec. 2911.01(A)(1). Both crimes involved a 'separate animus' or a separate offense within the meaning of Ohio Revised Code Sec. 2941.25(B) Prolonged restraint and secret confinement in a non trafficked area such as the storeroom of the Tannery may signify a separate animus and support a conviction for kidnapping apart from the commission of an underlying offense. See State v. Logan, 60 Ohio St. 2d 126, 134-35; 397 N.E.2d 1345, 1351 (1979). Appellant and his accomplice planned the restraint of Ms. Durgala and Ms. McElhiney as a separate and distinct part of the events of March 2, 1981. Thus the restraint in the instant case has significance independent of the underlying crime. Id.
 
 
 15
 Drescher's conduct clearly violated both the robbery and kidnapping statutes. Ohio Rev. Code Ann. Secs. 2905.02(A)(2), 2911.01(A)(1) (Page 1982). The facts in the particular case fit within Section 2941.25(B) which defines the circumstances in which a person may receive punishment for multiple offenses that have a common factual background. Accordingly, the judgment of the Honorable David D. Dowd, Jr. is affirmed.